IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01317-BNB

OLOYEA D. WALLIN,

     Plaintiff,

v.

RODNEY ACHEN,
MASCARENAS,
BELL,
T. STENZEL,
R. BASTIDOS,
DAVE ALLEN,
JAMES ABBOT, Warden of CTCF,
MASSEY,
HENRY WILLIAMS,
TOOMEY,
BENEVIDEZ,
FAZZINO,
MARY ANN ALDRICH,
TOFOYA,
CARLAND,
JANTZ,
LOPEZ-MARTINEZ,
LOPEZ,
JOHN AND JANE DOE OF CDOC, and
ARISTEDES ZAVARES, Executive Director of CDOC,

     Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 0 5 2011

GREGORY C. LANGHAM
CLERK

---

## ORDER OF DISMISSAL

---

Plaintiff, Oloyea D. Wallin, is in the custody of the Colorado Department of

Corrections (DOC) and currently is incarcerated at the Cheyenne Mountain Re-Entry

Center in Colorado Springs, Colorado.  On May 28, 2010, Mr. Wallin submitted to the

Court a Prisoner Complaint asserting violations of his constitutional rights pursuant to

42 U.S.C. § 1983.  Magistrate Judge Craig B. Shaffer reviewed the Complaint and

entered an order on June 29, 2010, instructing Mr. Wallin to amend the Complaint in

keeping with Fed. R. Civ. P. 8 and with *Nasious v. Two Unknown B.I.C.E. Agents*,

492 F.3d 1158, 1163 (10th Cir. 2007), which Mr. Wallin did on July 28, 2010.

Subsequently, Magistrate Judge Boyd N. Boland reviewed the July 28 Complaint, again

found that Mr. Wallin did not comply with Fed. R. Civ. P. 8 and *Nasious*, and instructed

him to file a Second Amended Complaint, which he did on September 1, 2010.

Magistrate Judge Boland reviewed the September 1 Complaint and determined that Mr.

Wallin still failed to comply with Fed. R. Civ. P. 8.  Mr. Wallin was given one last chance

to amend; he was instructed that if he failed to comply with the Court's third order to

amend the Court would consider additional filing restrictions separate from the 28

U.S.C. § 1915(g) restrictions to which he now is subject.  On October 8, 2010, Mr.

Wallin filed the Third Amended Complaint.  Also, starting on September 15, 2010, five

other prisoners, who are housed at the same facility as Mr. Wallin, filed Motions for

Joinder Pursuant to Fed. R. Civ. P. Rule 20 in this action.  Each of the prisoners

tendered a complaint that for the most part raises the same claims Mr. Wallin set forth in

his Third Amended Complaint.

The Court must construe the Third Amended Complaint liberally because Mr.

Wallin is a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v.

Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  If a complaint reasonably can be read

"to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, a court should not act as a *pro se* litigant's advocate. *See id.* For the reasons stated below, the Complaint and the action will be dismissed in part as legally frivolous and in part as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Mr. Wallin asserts six claims. In Claim One, Mr. Wallin alleges that his due process, equal protection, and Eighth Amendment rights were violated when he was removed from his kitchen job and placed on RP (Restricted Privileges) for ninety days while he was housed at the Colorado Territorial Correctional Facility (CTCF). Mr. Wallin further alleges that he was denied a hearing or justification for the RP placement and that the placement was done to harass and retaliate against him. Mr. Wallin also contends that his equal protection rights were violated because other like-offenders only served thirty days on RP. Mr. Wallin further contends that Defendants purposely altered the language and meaning of Administrative Regulation (AR) 600-05 when they instituted IA (Implementation and Adjustment) 600-05, which revised AR 600-05 and affected inmates housed at CTCF.

In Claim Two, Mr. Wallin alleges that AR 600-05 and IA 600-05 are unconstitutional as applied because they are applied without due process, they allow for long confinements in a cell without adequate recreation, and they permit grossly disproportionate sanctions for alleged offenses. In Claim Three, Mr. Wallin alleges that

3

Defendants' improper application of AR 600-05 and IA 600-05 also violates Colorado state tort law.

In Claim Four, Mr. Wallin alleges that Defendants violated his due process and equal protection rights and Colorado state tort law when they willfully and wantonly confiscated his property contrary to DOC and CTCF policies and failed to provide any predeprivation or postdeprivation hearings before destroying the property.

In Claim Five, Mr. Wallin alleges that Defendants, in violation of his due process, equal protection, and Eighth Amendment rights, willfully and wantonly harassed him, retaliated against him, and failed to remedy the situation even though they were in a position to do so.  Finally, in Claim Six, Mr. Wallin alleges that Defendants violated his due process, equal protection, and Eighth Amendment rights when they willfully and intentionally placed false and incorrect information in his parole and community corrections referrals, even though Mr. Wallin informed them the information in his PSI was incorrect, which resulted in Mr. Wallin being denied parole and community corrections.  Mr. Wallin seeks injunctive and declaratory relief and compensatory and punitive damages.

As for Claim One, a prisoner claiming that he has been subjected to cruel and unusual punishment based on the conditions of his confinement must demonstrate, in part, that the infringement was sufficiently serious.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The conditions must deprive a prisoner of the " 'minimal civilized measure of life's necessities. ' " *Wilson v.*

4

*Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  In the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail." *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994) (internal quotation marks omitted).  The core areas entitled to protection pursuant to the Eighth Amendment include food, shelter, sanitation, personal safety, medical care, and adequate clothing. *See Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992).

"[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates." *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir.1987) (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)); *accord Williams v. Greifinger*, 97 F.3d 699, 703-05 (2d Cir. 1996) (discussing contours of right to out-of-cell exercise); *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) ("Generally a prisoner should be permitted some regular out-of-cell exercise."); *Davenport v. DeRobertis*, 844 F.2d 1310, 1313 (7th Cir. 1988) (upholding district court finding that allowing inmates in segregation unit only one hour of out-of-cell exercise a week violated Eighth Amendment).  "Although we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment." *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994).

Nothing Mr. Wallin asserts in Claim One rises to the level of an Eighth Amendment violation.  Although Mr. Wallin claims he was denied adequate recreation

for ninety days and was subjected to a "long confinement" in his cell, he does not assert that he was completely denied recreation on a regular basis or that he specifically suffered any physical injury due to the limited access to recreation for the ninety days he was placed on RP.

In Grievance No. CTC8109-111, Mr. Wallin states that he was kept in his cell "except for rec. time (what little time this may be)." (*See* Doc. No. 5-1 at 17.) Mr. Wallin also claims that the reason he was not able to participate in recreation was due to legal access appointments and blood pressure checks. (*Id.* at 4.) Mr. Wallin, however, does not disagree with the response from DOC staff to his grievance that he was able to schedule his library sessions at a time other than when recreation took place or that blood pressure checks only took a few minutes and could have been done any time between 8 and 9 a.m., the time during which he is allowed to participate in recreation. (*Id.*) Mr. Wallin also does not assert that he was denied the ability to have his blood pressure checked and then proceed to recreation.

As for Mr. Wallin's due process claim, a liberty interest may arise under the United States Constitution or prison regulations. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). According to AR 600-05 "[a] restricted privileges status review shall be initiated for any DOC offender who . . . is terminated from[ ] a DOC sanctioned work . . . to which the offender is assigned . . . ." DOC AR 600-05 IV.A. Mr. Wallin was removed from his job based on a theft charge. The review and the decision to place Mr. Wallin on RP status is a classification action. *Id.* at IV.A.2.a. The Constitution does not provide a prison inmate with any liberty interest in his classification or placement

because he is not entitled to any particular degree of liberty in prison. ***Meachum v. Fano***, 427 U.S. 215, 225 (1976); ***Templeman v. Gunter***, 16 F.3d 367, 369 (10th Cir. 1994). Due process guarantees do not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. ***Meachum***, 427 U.S. at 224.

Prison regulations may create a liberty interest if they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." ***Sandin***, 515 U.S. at 484. The United States Supreme Court has recognized that a due process liberty interest is at stake when a prisoner's reclassification imposes an "atypical and significant hardship." ***See Wilkinson v. Austin***, 545 U.S. 209, 223 (2005). But the conditions in ***Wilkinson*** were extreme, including indefinite solitary confinement that rendered the prisoner ineligible for parole. ***See id.*** at 224. The extreme conditions found in ***Wilkinson*** are not present here. For the reasons stated above addressing Mr. Wallin's Eighth Amendment claim, the Court finds Mr. Wallin fails to assert that the limited recreation time he was given was an atypical and significant hardship and therefore a violation of his due process rights.

Furthermore, the version of AR 600-05 that was in effect at the time Mr. Wallin was placed in RP status states restricted privileges are effective the date of the classification approval and are for a minimum period of ninety days. DOC AR 600-05 IV.C. and VII; (Mem. Supporting Compl. (Doc. No. 5) at 64.) Also, to be removed from restricted privileges status an offender must be unassigned for sixty days and participate in an assigned program equivalent to the program causing placement in RP

7

status at a satisfactory level for thirty days. *Id.* at D.  The IA 600-05 implemented by the

CTCF, which accepted AR 600-05 with certain adjustments and was in effect at the time

Mr. Wallin was placed in RP status, provides that RP status will be for a minimum of

thirty days with a review by a case manager every thirty days until the prisoner becomes

compliant with the conditions of RP.  IA IV.C.2.  The decision by the case manager to

extend an inmate's time in RP is discretionary.  *Id.*  Although it is not clear if Mr. Wallin

received a thirty-day review consistent with IA 600-05, the placement in RP for ninety

days does not subject Mr. Wallin to an atypical and significant hardship in relation to the

ordinary incidents of prison life.  *See Sandin* at 487.  Mr. Wallin does not state a denial

of due process merely because DOC staff may have failed to review his compliance

status.  "[A] failure to adhere to administrative regulations does not equate to a

constitutional violation."  *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir.

1993) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984).  Furthermore, as stated

above, the Constitution does not provide a prison inmate with any liberty interest in his

classification or placement because he is not entitled to any particular degree of liberty

in prison.

 Mr. Wallin's claims of harassment and retaliation also are without merit.  "Mere

allegations of constitutional retaliation will not suffice; plaintiff must rather allege specific

facts showing retaliation because of the exercise of the prisoner's constitutional rights."

*Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see Peterson v. Shanks*,

149 F.3d 1140, 1144 (10th Cir. 1998) (a plaintiff must demonstrate that the "alleged

retaliatory motives were the 'but for' cause of the defendants' actions").  Mr. Wallin does

not assert what constitutional right he was exercising that was the basis for the alleged harassment or retaliation by any named defendant.

Mr. Wallin was removed from his job assignment in the diet kitchen for unauthorized possession of fifteen to eighteen servings of egg whites and was placed on RP status. (*See* Mem. Supporting Compl. at 7.)  Mr. Wallin claims in his grievance regarding his removal from the diet kitchen that he was carrying his breakfast tray with cooked eggs when Defendant Mascarinas in abuse of his authority told him that he could not have the eggs and took the tray from him. (*Id.* (Doc. No. 5-1) at 7.)  Mr. Wallin has no constitutional right to certain foods.   Mr. Wallin also does not identify a statute or regulation that entitles him to a prison job.  Without such a statute or regulation Mr. Wallin does not have a constitutional right to employment.  *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).  Mr. Wallin, therefore, provides no specific facts that would support a finding that the "but for" cause for placing Mr. Wallin in RP status is retaliation by prison staff for his exercising a constitutional right.

Furthermore, Mr. Wallin does not have a right to receive the same sanctions as other prisoners who are convicted of the same offenses.  *See Williams v. Illinois*, 399 U.S. 235, 243 (1970).  A prison disciplinary sanction involves factors other than the offense, including past conduct.  *See Sweatt v. McBride*, 24 Fed. Appx. 572, 575 (7th Cir. Nov. 21, 2001) (unpublished).  Mr. Wallin has not shown that his treatment was "invidiously dissimilar from that accorded other inmates," *Herndon v. Youngman*, 34 F.3d 1070 *2 (8th Cir. Sept. 8, 1994) (unpublished) (citing *Flittie v. Solem,* 827 F.2d

276, 281 (8th Cir. 1987) (per curiam), or that other similarly situated inmates received preferential treatment.  Therefore, Claim One will be dismissed as legally frivolous.

The Court also finds that Claim Two fails to state a nonfrivolous claim and will be dismissed for the same reasons as stated above for dismissing Claim One.  The Court, therefore, will decline to exercise supplemental jurisdiction over the state law claims that Mr. Wallin asserts in Claim Three because the constitutional claims raised in Claims One and Two, over which the Court may have had original jurisdiction, will be dismissed.  *See* 28 U.S.C. § 1367(c)(3).

With respect to Mr. Wallin's property claim set forth in Claim Four, an unauthorized intentional deprivation of property by state officials does not violate the Due Process Clause if a meaningful postdeprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989) (per curiam).  Although Mr. Wallin asserts in general that he was denied both a predeprivation and postdeprivation hearing before some of his property was destroyed, he has attached to Document No. 5 copies of grievances that he filed regarding the confiscation of his property.  (Mem. Supporting Compl. at 31-35, 40-50.)

It is clear that a grievance procedure exists at the DOC for Mr. Wallin to challenge the confiscation and destruction of his property.  Mr. Wallin utilized the grievance procedure for at least some of the confiscation incidents.  Even if Mr. Wallin did not utilize the procedure for all of his confiscation claims, he knew that it was available to him.  The fact that Mr. Wallin's grievances were denied does not itself demonstrate a violation of a constitutional right or an inadequate remedy.  *See Flick v.*

*Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam); *see also Sawyer v. Green*, 316

F. App'x 715, 717 n.3 (10th Cir. 2008).  The Court finds that an adequate

postdeprivation remedy for Mr. Wallin's loss was available, which either he used or was

able to use to challenge the confiscation of his property.  Therefore, Mr. Wallin's due

process claim regarding the confiscation of his property is legally frivolous and will be

dismissed.

Mr. Wallin's claims of retaliation, harassment, and dissimilar treatment in Claim

Five are denied as legally frivolous.  Mr. Wallin does not assert in Claim Five that he

was retaliated against for exercising a constitutional right or that the "but for" cause for

either placement in RP status or for confiscating his property was retaliation.  Mr.

Wallin's claim that other offenders in like situations were not treated the same as he

fails because he does not have a right to receive the same sanctions as others

convicted of the same offenses.  Claim Five, therefore, lacks merit and will be dismissed

as legally frivolous.

Finally with respect to Claim Six, "to establish a constitutional violation, [Mr.

Wallin] must show that an additional action taken on the basis of the information

deprived him of a liberty or property interest." *Gee v. Pacheco*, ___ F.3d ___, 2010 WL

4909644 * 12 (10th Cir. 2010).  If there is a connection between the false information

and the denial of parole or placement in community corrections a liberty interest may be

established.  *See Wilson v. Jones*, 430 F.3d 1113, 1119 (10th Cir. 2005) ("[T]he

connection between a disciplinary decision and the length of a prisoner's sentence may

be sufficient to establish a liberty interest when the prisoner establishes that the

decision was the only factor that lengthened the sentence."). If Mr. Wallin were successful in showing that parole or community corrections was denied because of false information contained in his PSI report, this would necessarily cast doubt on the parole or placement decision itself.

However, before bringing a damage claim that casts doubt on the length of his continued incarceration, Mr. Wallin must first pursue a successful action for habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *see also Butterfield v. Bail*, 120 F.3d 1023, 1024 & n. 1 (9th Cir. 1997) (barring action for damages where inmate, who had not yet pursued his claim through a writ of habeas corpus, sought damages because false information in prison file was used to deny parole). Any claim for damages is barred until a claim successfully has been pursued through a writ of habeas corpus. Claim Six, therefore, lacks merit and will be dismissed.

Because the action will be dismissed, the five pending motions for joinder filed pursuant to Fed. R. Civ. P. 20 will be denied. Accordingly, it is

ORDERED that the Complaint and action are dismissed in part pursuant to 28 U.S.C. § 1915(e)(2)(b)(i) and in part pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). It is

FURTHER ORDERED that the state law claims asserted in Claim Three, over which the Court declined to exercise supplemental jurisdiction, will be dismissed without prejudice. It is

FURTHER ORDERED that the Motions for Joinder (Doc. Nos. 14, 16, 18, 23, and 24) are denied as moot.

DATED at Denver, Colorado, this __4th__ day of _____January_____, 2011.

BY THE COURT:


    __s/Lewis T. Babcock_____
    LEWIS T. BABCOCK, Judge
    United States District Court

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**CERTIFICATE OF MAILING**

Civil Action No. 10-cv-01317-LTB

Oloyea D. Wallin
Prisoner No. 111389
CMRC
2925 East Las Vegas Street
Colorado Springs, CO 80906


I hereby certify that I have mailed a copy of the **ORDER and JUDGMENT** to the above-named individuals on January 5, 2011


GREGORY C. LANGHAM, CLERK


By:_____
                    Deputy Clerk